

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00172-CV

**J-W POWER COMPANY**,
Appellant

v.

**DUVAL COUNTY APPRAISAL DISTRICT**,
Appellee

From the 229th Judicial District Court, Duval County, Texas
Trial Court No. DC-19-210
Honorable Baldemar Garza, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:        Luz Elena D. Chapa, Justice
                Beth Watkins, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: March 16, 2022

AFFIRMED

J-W Power sued the Duval County Appraisal District seeking to remove some of its property from the appraisal rolls for tax years 2013–2016. On cross-motions, the trial court granted summary judgment in favor of the Appraisal District and denied J-W Power summary judgment. J-W Power appeals. We affirm.

## LEGAL BACKGROUND

Dealer's heavy equipment inventory is, as the name implies, heavy equipment a dealer owns and may lease to its customers. *See* TEX. TAX CODE ANN. § 23.1241(a)(2). It often happens

that a dealer operates out of one county and leases its heavy equipment to a customer for use in another county. *EXLP Leasing, LLC v. Galveston Cent. Appraisal Dist.*, 554 S.W.3d 572, 574 (Tex. 2018). When that happens, questions may arise about which county has authority to tax the heavy equipment. *See id.*

In 2011 and before, counties assessed taxes on individual equipment that was used in their jurisdictions as business personal property. *See id.* In 2011 amendments to the Texas Tax Code, however, the legislature provided that all equipment, including leased equipment, that met the definition of dealer's heavy equipment inventory should be taxed collectively as inventory. *See* TEX. TAX CODE ANN. §§ 23.1241, 23.1242. It also authorized the county where the dealer maintains the inventory to tax that inventory rather than the various counties where the individual pieces of equipment might be physically located. *See id.*

Believing this statutory scheme to be unconstitutional, several appraisal districts continued to appraise dealer's heavy equipment inventory as business personal property. *See, e.g., EXLP Leasing*, 554 S.W.3d at 574; *Ward Cty. Appraisal Dist. v. EES Leasing LLC*, 563 S.W.3d 203, 204 (Tex. 2018) (per curiam); *Reeves Cty. Appraisal Dist. v. MidCon Compression, L.L.C.*, 563 S.W.3d 207, 208 (Tex. 2018) (per curiam); *Reeves Cty. Appraisal Dist. v. Valerus Compression Servs.*, 563 S.W.3d 210, 211 (Tex. 2018) (per curiam); *Loving Cty. Appraisal Dist. v. EXLP Leasing, LLC*, 563 S.W.3d 213, 214 (Tex. 2018) (per curiam). Many dealers protested those appraisals and appealed to district courts. That litigation resulted in the 2018 opinion of the Supreme Court of Texas in *EXLP Leasing* rejecting the Appraisal District's arguments that sections 23.1241 and 23.1242 were constitutional. *See* 554 S.W.3d at 574. This dispute arose against that backdrop.

**FACTUAL BACKGROUND**

J-W Power owns compressor packages it leases to customers for use in the oil and gas industry. It is undisputed that these compressors meet the statutory definition of dealer's heavy

equipment inventory. When not in use, J-W Power stores its compressors in storage yards in eleven counties across the state.

This dispute involves compressors that J-W Power leased to its customers for use in Duval County from 2013–2017. J-W Power provided these compressors from its storage yard in Jim Wells County[1] where it also maintains an office. Although J-W Power did not report the compressors to Duval County as taxable property, the Duval County Appraisal District included them on its appraisal rolls as business personal property. J-W Power protested, arguing that the compressors were dealer heavy equipment inventory reported for taxation in Jim Wells County, where J-W Power maintains its inventory. The Duval County Appraisal Review Board (ARB) dismissed or denied the protests, and J-W Power did not seek judicial review of the decisions for tax years 2013–2016. But J-W Power did seek judicial review of that decision for tax year 2017.[2] That litigation resulted in a February 6, 2019 agreed judgment that the taxable situs for J-W Power's compressors was Jim Wells County rather than Duval County. With the parties' agreement, the trial court ordered the Appraisal District to remove J-W Power's compressors from its appraisal rolls and to issue J-W Power a refund.

Meanwhile, in December 2018, J-W Power sought that same relief for tax years 2013–2016 through a motion for correction it filed with the ARB. J-W Power alleged that the Appraisal District had not only erroneously committed "multiple appraisals of a property," but also wrongly included on its rolls "property that does not exist in the form or at the location described in the appraisal roll." The ARB again sided with Duval County and J-W Power again sought judicial review. J-W Power sued seeking actual damages, exemplary damages, interest, and attorneys' fees.

---

[1] J-W Power leases equipment from its Jim Wells County service yard for use in Duval and eighteen other counties.
[2] While J-W Power's appeal of the ARB's decision about the 2017 tax year was pending in district court, the Texas Supreme Court handed down its opinion in *EXLP Leasing*.

The parties filed competing motions for summary judgment. The trial court granted the Appraisal District's motion and denied J-W Power's motion. J-W Power appealed.

## ANALYSIS

### *Standard of Review*

To be entitled to a traditional summary judgment, the movant must show there are no genuine issues as to any material facts and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). A plaintiff is entitled to traditional summary judgment on its own affirmative claim if it conclusively proves all essential elements of that claim. *Compass Bank v. Durant*, 516 S.W.3d 557, 565 (Tex. App.—Fort Worth 2017, pet. denied). Conversely, "[a] defendant who conclusively negates at least one of the essential elements of a cause of action or conclusively establishes an affirmative defense is entitled to [traditional] summary judgment." *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). We consider the evidence in the light most favorable to the respondent and indulge every reasonable inference in its favor. *Lightning Oil*, 520 S.W.3d at 45. When both sides move for summary judgment on the same issue and the trial court grants one motion and denies the other, we review all the summary judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *Tex. Mut. Ins. Co. v. PHI Air Med., LLC*, 610 S.W.3d 839, 846 (Tex. 2020).

### *Evidentiary Issues*

The Appraisal District objected to some of J-W Power's summary judgment evidence below. In this court, it argues the trial court erred by considering evidence that J-W Power "paid any dealer heavy equipment inventory tax in Jim Wells County, much less on the Duval based compressors." The appellate record contains no indication that the trial court ruled on these

objections. We therefore decline to address the Appraisal District's evidentiary complaints. *See* Tex. R. App. P. 33.1, 38.2.

### *Applicability of Section 25.25*

#### *Applicable Law*

The legislature has provided just "two direct avenues by which an appraisal roll may be changed." *Willacy Cty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd*., 555 S.W.3d 29, 40 (Tex. 2018). The first avenue is by way of a Chapter 41 protest. These are "broad in scope and weigh in favor of the property owner, placing the burden of establishing the value of the property on the appraisal district." *Id*. (citing Tex. Tax Code Ann. §§ 41.41, 41.43(a)). "However, such protests are subject to strict time limitations." *Id*. (citing Tex. Tax Code Ann. § 41.44). "In most cases, a property owner must file a notice of protest within thirty days of receiving notice of the appraised value—that is, before the final deadline for the appraisal records to be approved by the ARB." *Id*. (citing Tex. Tax Code Ann. § 41.44(a)(2)).

"Section 25.25, on the other hand, allows corrections after the time to protest has expired and appraisal rolls have been approved." *Id*. (citing Tex. Tax Code Ann. § 25.25). Section 25.25 corrections usually do not involve the substantive re-evaluation of a property's market value. *Id*. at 41 & n.6. "Such corrections can be made only under limited circumstances, but they are afforded a more generous limitations period." *Id*. at 40. "Section 25.25(c) gives a property owner up to five years to request that the ARB change the appraisal roll to correct: (1) clerical errors; (2) multiple appraisals; or (3) the inclusion of property that does not exist in the form or at the location described in the appraisal roll." *Benson Chevrolet, Inc. v. Bexar Appraisal Dist*., 242 S.W.3d 54, 57 (Tex. App.—San Antonio 2007, no pet.) (citing Tex. Tax Code Ann. § 25.25(c)). The purpose "of section 25.25 is to permit the correction of objective, factual errors that would cause the

payment of taxes based on the uncorrected records to be fundamentally unfair." *Sebastian Cotton*, 555 S.W.3d at 41 (internal quotation marks omitted).

A property owner may appeal an ARB order resulting from either of those processes. *Id.* at 40 (citing TEX. TAX CODE ANN. §§ 25.25(a), 42.01). "An appeal of an ARB determination to the district court is a trial de novo, and the district court 'shall try all issues of fact and law raised by the pleadings in the manner applicable to civil suits generally.'" *Id.* at 50 (quoting TEX. TAX CODE ANN. § 42.23(a)). "A trial de novo is '[a] new trial on the entire case . . . conducted as if there had been no trial in the first instance.'" *Id.* (quoting BLACK'S LAW DICTIONARY (10th ed. 2014)).

*Application*

Here, the trial court "tr[ied] all issues of fact and law raised by the pleadings" on the parties' motions for summary judgment on this issue. *See id.* (internal quotation marks omitted); *see also* TEX. R. CIV. P. 166a(c). In its motion for summary judgment, the Appraisal District asserted that the relief J-W Power sought exceeds the scope of relief authorized by section 25.25(c) because that subsection "cannot be used to correct substantive matters such as situs or determining whether property is taxable." In contrast, J-W Power's motion argued that the Appraisal District incorrectly included the compressors on its rolls and that the rolls can be corrected under section 25.25(c), either because the compressors were subject to multiple appraisals or because they were included on Duval County's appraisal rolls even though they did not exist in the form or at the location described by those rolls.

As both parties recognize, under *EXLP Leasing*, the situs[3] for J-W Power's compressors is the county where J-W Power maintains its inventory—Jim Wells County—and the compressors

---

[3] "Situs" is the place "where personal property shall be regarded as being situated for the purpose of taxation." *See City of Dallas v. Tex. Prudential Ins. Co.*, 291 S.W.2d 693, 695 (Tex. 1956).

are taxable in Jim Wells County as part of J-W Power's dealer heavy equipment inventory. This is because "[i]f a county seeks to tax discrete units in its jurisdiction under section 21.02 [as business personal property], it must ignore [the 2011 amendments that added Tax Code] sections 23.1241 and 23.1242 [and the scheme of taxing dealer heavy equipment inventory] altogether." *See EXLP Leasing*, 554 S.W.3d at 584.

The question before the trial court, and now before us, is whether—despite those facts—J-W Power established as a matter of law that the Duval County appraisal rolls for tax years 2013–2016 should be corrected because they caused "multiple appraisals of a property in that tax year," or they "inclu[ded] property that does not exist in the form or at the location described in the appraisal roll." *See* TEX. TAX CODE § 25.25(c)(2), (3); *see also* TEX. R. APP. P. 166a(c). Alternatively, the Appraisal District could have shown it was entitled to judgment as a matter of law by conclusively demonstrating that J-W Power was not entitled to relief under section 25.25. *See* TEX. R. APP. P. 166a(c).

The Appraisal District argues it met its summary judgment burden on this issue because J-W Power's attempt to correct the appraisal rolls is not authorized by section 25.25 as a matter of law. However, J-W Power argued it was subject to multiple appraisals and that the Appraisal District's assessment included property that did not "exist in the form or at the location described in the appraisal roll," conditions explicitly recognized by section 25.25. *See* TEX. TAX CODE § 25.25(c)(2), (3). We agree with J-W Power that these claims facially fall under the plain language of section 25.25(c)(2) and (3). *See id.*; *Brooks Cty. Cent. Appraisal Dist. v. Tipperary Energy Corp.*, 847 S.W.2d 592, 596–97 (Tex. App.—San Antonio 1992, no writ). Accordingly, we reject the Appraisal District's claim that J-W Power could not seek relief under section 25.25.

***Section 25.25 Appraisal Roll Correction—Double Appraisal***

Our conclusion that J-W Power was entitled to *seek* relief under section 25.25(c) does not necessarily mean it was entitled to *obtain* relief under that statute. We must determine whether J-W Power conclusively showed—or, alternatively, whether the Appraisal District conclusively disproved—that the Appraisal District was required to correct the tax rolls to correct either "multiple appraisals of a property" or "the inclusion of property that does not exist in the form or at the location described in the appraisal roll" for tax years 2013–2016. TEX. TAX CODE § 25.25(c)(2), (3).

*Applicable Law*

Section 21.02 applies to tangible personal property generally and provides the default rule that tangible personal property is taxable by a taxing unit if "it is located in the unit on January 1 for more than a temporary period[.]" *See* TEX. TAX CODE ANN. § 21.02. Sections 23.1241 and 23.1242 "create a statutory framework specific to dealer-held heavy equipment that assumes or necessitates a taxable-situs rule different from section 21.02[.]" *EXLP Leasing, LLC*, 554 S.W.3d at 582–83. This statutory framework "plainly calls for prepayments based on the monthly revenue generated by a dealer's *entire* inventory, regardless of the physical location of individual units." *Id*. at 584. "It necessarily follows that those prepayments—and the dealer's ultimate tax liability—can be made and incurred in only one county." *Id*. "Otherwise, dealers would face double or greater taxation when paying taxes on an entire inventory in every county where a unit of property is located. And application of the default situs provision would lead to exactly that result." *Id*.

*Application*

J-W Power argues that, for each tax year, its compressors appraised in Duval County were also appraised as part of its heavy equipment inventory in Jim Wells County, resulting in the multiple appraisals that the *EXLP Leasing* Court warned about. As evidence that the compressors

had been doubly appraised, J-W Power presented an affidavit dated September 17, 2020 from its Vice President, Kavin Tubbs, swearing that for the tax years at issue:

- "J-W Power maintained its compressor inventory of compressors physically located in Duval County at J-W Power's business location and storage yard in Jim Wells County ('Yard County')";

- "J-W Power assigned and self-reported its dealers' heavy equipment inventory maintained in the Yard County to the Yard County pursuant to section 23.1241 of the Texas Tax Code, by filing the required declarations in the Yard County"; and

- "J-W Power tendered payment for the inventory taxes on its inventory pursuant to section 23.1242 of the Texas Tax Code."

But in his deposition testimony a month later, Tubbs acknowledged that at the time he filed this and previous similar affidavits, the company had misunderstood the applicable statute: J-W Power had only reported compressors in the initial month of their lease instead of every month of their lease. So, while J-W Power's revenue spreadsheet for tax years 2013–2016 shows that 46–78 compressors were leased out of the Jim Wells Yard each month, the company only reported to Jim Wells County 9 compressor leases in tax year 2013, 13 compressor leases in tax year 2014, 28 compressor leases in tax year 2015, and 10 compressor leases in tax year 2016.

The revenue spreadsheet identifies compressors that were appraised by Duval County—units 1888, 2770, 3237, 3558, 3937 and 4172—as being assigned to the Jim Wells County Storage yard and leased from that yard during 2013–2016. But it is undisputed that none of those compressors were reported to Jim Wells County. Tubbs acknowledged that he was not aware of any compressor on the Duval County appraisal rolls that also had been reported to the Jim Wells County Appraisal District in the required monthly statements. He further acknowledged that the Jim Wells County Appraisal District did not itself include those compressors on its rolls as dealer heavy equipment inventory in the relevant tax years.

J-W Power argues that the fact that it did not report the compressors taxed in Duval County to Jim Wells County is irrelevant because they are nevertheless part of an inventory maintained in Jim Wells County and appraised by the Jim Wells County Appraisal District. J-W Power relies on language in *EXLP Leasing* emphasizing that "[s]ection 23.1241 includes no process for tracking individual units or documenting the revenue they produce while located in any given county on any particular date." *Id*. at 583. Because those requirements are contained in section 23.1242, J-W Power's reliance on this isolated quotation is misplaced. Under the plain language of the statute, as recognized by the Texas Supreme Court in *EXLP Leasing*:

- "[T]he dealer must file with 'the collector' monthly heavy-equipment inventory tax statements indicating the 'unit property tax' of *all items* sold or *leased* the preceding month and, 'together with the statement,' must 'deposit with the collector an amount equal to the total of unit property tax assigned to *all items* of heavy equipment sold, *leased*, or rented from the dealer's heavy equipment inventory in the preceding month to which a unit property tax was assigned.' [TEX. TAX CODE] § 23.1242(b)."

- "Those funds are held in escrow [for the owner]. [TEX. TAX CODE] § 23.1242(c). At the end of the year, after tax rates are finalized, the taxing unit prepares the annual tax bill, toward which prepayments held in escrow are applied. *See* [TEX. TAX CODE] § 23.1242(h)."

- "This tax-prepayment system centers on the 'unit property tax,' which is calculated by multiplying the payments received *for each unit* by the 'unit property tax factor,' calculated as the 'tax rate at the *location where a dealer's heavy equipment inventory* is located on January 1'—not the different tax rates at the various locations where each individual unit of the dealer's inventory is located on January 1. [TEX. TAX CODE] § 23.1242(a)(4)."

*Id*. at 584 (some emphasis added). And these monthly heavy equipment inventory tax statements must include "a description of each item of heavy equipment sold, leased, or rented including any unique identification or serial number affixed to the item by the manufacturer[.]" TEX. TAX CODE ANN. § 23.1242(e)(1). So, while the prepayments are based on the monthly revenue generated by

a dealer's entire inventory, regardless of the physical location of individual units, the individual units must nevertheless be accounted for, wherever they may be. *See id*.; TEX. TAX CODE ANN. § 23.1241(a)(2).

Furthermore, J-W Power's Duval County compressors were not actually appraised in tax years 2013–2016 by the Jim Wells County Appraisal District. J-W Power's position is that because it reported some of its compressors to the Jim Wells County Appraisal District for tax years 2013–2016, all the compressors nominally leased out of the Jim Wells Yard during the same time frame were, in fact, appraised by the Jim Wells County Appraisal District. But for the Duval County compressors to be appraised as dealer's heavy equipment inventory by Jim Wells County Appraisal District, they must first have been reported to that appraisal district in a statement by a property owner under section 23.1242. *See* TEX. TAX CODE § 23.1242(e)(1).

The summary judgment evidence shows that J-W Power reported some of its compressors to Jim Wells County; it does not show that J-W Power reported any of the compressors at issue here as part of its inventory. The fact that these specific compressors were not reported is significant because J-W Power seeks to have them removed from the rolls for tax years 2013–2016 based on its claim of "multiple appraisals" of the property in those tax years. But we "do not presume double taxation merely because it is semantically possible[.]" *Bosque Disposal Sys., LLC v. Parker Cty. Appraisal Dist*., 555 S.W.3d 92, 97 (Tex. 2018). "Instead, evidence about what property was or was not included in each appraisal account should be consulted to determine whether double taxation has in fact occurred." *Id.* (internal quotation marks omitted).

The appraisal accounts conclusively negate J-W Power's claim that it reported the Duval County compressors to the Jim Wells Appraisal District. This is not a multiple appraisals case. On this summary judgment record, the trial court did not err by concluding the Appraisal District was entitled to judgment as a matter of law on J-W Power's "multiple appraisals" claim. *See* TEX. R.

CIV. P. 166a(c); TEX. TAX CODE § 25.25(c)(2); *Cf. GE Capital Corp. v. Hunt Cty. Appraisal Dist.*, No. 05-97-02192-CV, 2000 WL 348562, at \*7 (Tex. App.—Dallas Apr. 5, 2000, no pet.) ("GE Capital's summary judgment evidence conclusively shows it paid both Hunt County and Dallas County appraisal districts for the same property in tax year 1993.").

### *Section 25.25 Appraisal Roll Correction—Form and Location*

*Applicable Law*

J-W Power also argues it is entitled to relief as a matter of law because the Appraisal District improperly included on its rolls property that does not exist in the form or at the location described in the appraisal rolls. Section 25.25(c)(3) authorizes corrections for "the inclusion of property that does not exist in the form or at the location described in the appraisal roll." TEX. TAX CODE ANN. § 25.25(c)(3). The term "form" means "a physical description of the property other than its appraised value or its use, such as real property, personal property, or an improvement to real property." *Curtis C. Gunn, Inc. v. Bexar Cty. Appraisal Dist.*, 71 S.W.3d 425, 428 (Tex. App.—San Antonio 2002, pet. denied); *see Titanium Metals Corp. v. Dall. Cty. Appraisal Dist.*, 3 S.W.3d 63, 66 (Tex. App.—Dallas 1999, no pet.) (defining "form" in this context "to mean its identification as a type of property listed under section 25.02(a),[4] such as real property, personal property, an improvement to real property, or some other physical description of the property on the appraisal roll, other than its appraised value or its use") (internal quotation marks omitted).

Definitions of different kinds of property are set out in the Texas Tax Code. "Property" itself is "any matter or thing capable of private ownership." TEX. TAX CODE ANN. § 1.04(1). "Personal property" means "property that is not real property." TEX. TAX CODE ANN. § 1.04(4).

---

[4] That section governs the form and content of the local appraisal records and provides that appraisal records "shall include" real property, "separately taxable estates or interest in real property, including taxable possessory interests in exempt real property," and personal property. TEX. TAX CODE ANN. § 25.02.

"Tangible personal property" is "personal property that can be seen, weighed, measured, felt, or otherwise perceived by the senses[.]." TEX. TAX CODE ANN. § 1.04(5).

"Location" for purposes of section 25.25(c)(3) means the property's physical location. *SPX Corp. v. Altinger*, 614 S.W.3d 362, 375 (Tex. App.—Houston [14th Dist.] 2020, no pet.). "Location" for purposes of section 25.25(c)(3) does not mean the property's taxable situs. *Id*. For a 25.25(c)(3) correction to be authorized, the appraisal roll must erroneously reflect "that a particular form of property exists at a specified location, and, in fact, no such property exists at that location." *Id*. (internal quotation marks omitted).

*Application*

J-W Power admits that each compressor identified in the Duval County Tax Rolls was physically located in Duval County. But J-W Power argues that the compressors are not tangible personal property in form. Rather, it contends the compressors are inventory in form, and no inventory exists in Duval County because Duval County is not one of its yard counties.

J-W Power's argument is an end run around the rule that 25.25(c)(3) cannot be used to challenge the extent to which a certain type of property, physically located in an appraisal district, is taxable in that appraisal district. As our sister court recognized in *Harris County Appraisal District v. Texas Gas Transmission Corp.*:

> The plain meaning of "property that does not exist at the location described in the appraisal roll" obviously refers to the actual, physical presence of property at the place described in the appraisal roll. Defining the term "location" as meaning actual, physical location restricts section 25.25(c)(3) to those cases in which property did not physically exist at the appraisal roll location at any time during the taxable year. Thus, if there is some existence at the location, section 25.25(c)(3) does not allow a change in the appraisal roll. To hold otherwise would not give effect to the words "does not exist" in section 25.25(c)(3).

105 S.W.3d 88, 97 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (noting legislative history makes clear that the section addresses only non-existent property); *see also Altinger*, 614 S.W.3d

at 375–76 (section 25.25(c)(3) motion is not a proper means to change the property's taxable situs); *Curtis C. Gunn*, 71 S.W.3d at 429 (section 25.25(c)(3) does not allow a party to challenge the extent to which business personal property located in a particular jurisdiction is taxable in that jurisdiction); *Titanium Metals*, 3 S.W.3d at 66 (a section 25.25(c)(3) motion is not a proper means to contest the value of personal property at the location described in the roll); *Harris Cty. Appraisal Dist. v. ETC Mktg., Ltd.*, 399 S.W.3d 364, 370 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ("An argument that certain property is exempt from taxation does not implicate either the property's form or its location.").

Although *EXLP Leasing* made clear that the situs of dealer heavy equipment is the location where the dealer maintains its inventory, rather than at the various locations where the equipment might otherwise be physically located, it also recognized that inventory is still tangible personal property:

> We hold section 21.02 does not control the taxable situs of property covered by section 23.1242. Although section 21.02(a) does not include an exception to its applicability for leased heavy-equipment inventory, it nonetheless cannot be applied while giving effect to the valuation and prepayment framework created by sections 23.1241 and 23.1242. But both statutes can be given full effect if section 21.02(a) is seen for what it is—a default rule determining taxable situs for *tangible personal property generally*—and if sections 23.1241 and 23.1242 are read to create a comprehensive statutory scheme containing its own taxable-situs rules.

*EXLP Leasing*, 554 S.W.3d at 585 (emphasis added). Additionally, while *EXLP Leasing* recognized that dealer heavy equipment's "taxable situs" is controlled by section 23.1242, we see nothing in that opinion that abrogates section 25.25(c)(3)'s requirement that a challenge to an allegedly improper assessment under that subsection must be supported by a showing that the property in question "does not exist . . . at the location described in the appraisal roll." *Compare id.*, *with* TEX. TAX CODE § 25.25(c)(3); *see also Altinger*, 614 S.W.3d at 375–76. The compressors exist in the form and location described in the Duval County appraisal roll. For that reason, a

section 25.25(c)(3) correction does not lie. Accordingly, the trial court did not err by concluding the Appraisal District was entitled to judgment as a matter of law on J-W Power's "form or location" claim. *See* TEX. R. CIV. P. 166a(c); TEX. TAX CODE § 25.25(c)(3); *Bauer-Pileco, Inc. v. Harris Cty. Appraisal Dist.*, 443 S.W.3d 304, 314 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

Given our disposition of the parties' competing claims regarding Section 25.25, we need not address whether the Appraisal District was entitled to summary judgment on the alternative grounds of res judicata or failure to exhaust administrative remedies. TEX. R. APP. P. 47.1.

## CONCLUSION

We affirm the trial court's judgment.

Beth Watkins, Justice